# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI A. COOPER,<br>    Plaintiff, | )<br>)<br>) |
| -vs- | )   Case No. CIV-10-871-M<br>) |
| MICHAEL J. ASTRUE,<br>Commissioner,<br>Social Security Administration,<br>    Defendant | )<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Terri Cooper ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and matter remanded for further proceedings.

## Administrative Proceedings

Plaintiff initiated these proceedings by protectively filing her applications seeking disability insurance benefits and supplemental security income payments in May, 2006 [Tr. 81 - 83, 86 - 89, and 92]. She alleged that "[c]ervical cord compression/spine fusion" caused her to be "in pain every day, sometimes excruciating" and that her pain medication "affect[ed] her] ability to think." [Tr. 97]. She maintained that she became disabled as of September 21,

2004, as a result of her condition. *Id.* Plaintiff's claims were denied and, at her request [Tr. 65], an Administrative Law Judge ("ALJ") conducted an August, 2008 hearing where Plaintiff, who was represented by counsel, a medical expert, and a vocational expert testified [Tr. 20 - 42]. In her January, 2009 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 10 - 19]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

While Plaintiff presents multiple claims of error on judicial review, remand is recommended because the ALJ's residual functional capacity ("RFC")[1] assessment for a limited range of light work lacks legal and evidentiary support. Accordingly, the remaining

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

claims will not be addressed. *See Watkins v. Barnhart,* 350 F. 3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**<u>Analysis</u>**

The ALJ determined that Plaintiff retained the capacity to perform a limited range of light work [Tr. 14]. Pursuant to Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Further, a job is in the light work category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* In support of this evaluation, the ALJ gave "great weight" [Tr. 17] to the opinion of the non-examining State agency medical consultant with regard to Plaintiff's ability to lift and/or carry – twenty pounds occasionally and ten pounds frequently; stand and/or walk – about six hours in an eight-hour workday; and, sit – about six hours in an eight-hour workday [Tr. 228].

Nonetheless, as Plaintiff argues, the medical evidence regarding Plaintiff's physical abilities – specifically, lifting, sitting, standing, and walking – is controverted. For example, as to the opinions of Dr. Dixon, the medical expert called by the ALJ to testify at the administrative hearing, the ALJ found as follows:

> At the hearing, the impartial medical expert testified regarding the claimant's three level cervical fusion and her continuing neck and shoulder pain. He noted there were no objective findings regarding the radicular symptoms; and the fusion was reported as being complete. Regarding her low back pain, the claimant sometimes had positive straight leg raising test, but there is no other

4

objective evidence, no lumbar x-ray (at that time), no MRI and no EMG. The impartial medical expert supposed that additional testing would show that most of the pathology for the claimant's symptoms was in the lumbar spine. As noted above, however, the September 2008 lumbar spine x-rays were essentially negative.[2] He noted that although the cervical fusion was successful the claimant was still having symptoms in her neck and shoulders. . . . He opined that the claimant could do the walking and standing requirements for sedentary work, but could lift less than 10 pounds, was severely limited in her over shoulder level reaching; her ability to push pull would be limited by the limited ability to look up. He also testified that the claimant could do no climbing, balancing, stooping, kneeling, crouching and crawling. The Administrative Law Judge notes that the impartial medical expert did not have access to the post-hearing x-rays and the assessment supposed some findings of severe lumbar involvement in the claimant's radicular symptoms and back pain. The Administrative Law Judge finds the complete medical evidence of record supports a less restrictive residual functional capacity.

[Tr. 15].

Plaintiff, on the other hand, argues that Dr. Dixon found, in part, that Plaintiff has "seriously compromised function" and imposed a less than two pound lifting restriction [Doc. No. 13, p. 9]. The Commissioner, in turn, does not dispute Plaintiff's contention that Dr. Dixon testified as to a less than two pound lifting restriction but argues that "[g]iven the fact

---

[2]Following the administrative hearing, Plaintiff underwent x-rays of her lumbar spine [263]. The ALJ interpreted the results as they relate to Plaintiff's complaints in the following manner:

> The claimant's back and radicular complaints remain unexplained because the September 2008 x-rays showed essentially negative lumbar spine, with only mild L2 to L5 endplate spurring. There was normal alignment, preserved vertebral body heights and no subluxation with left or right bending. (Exhibit 10F). The x-rays evidence was obtained after the claimant's hearing. They failed to show any stenosis.

[Tr. 13].

5

that the ALJ rejected what she described as Dr. Dixon's testimony about a 10-pound lifting limitation (due to Plaintiff's post-hearing lumbar spine x-rays, which were essentially normal), it is also likely that the ALJ would have rejected testimony about a 2-pound lifting limitation[.]" [Doc. No. 14, p. 6]. The Commissioner does not address Plaintiff's contention regarding Dr. Dixon's statement that Plaintiff's function was seriously compromised.

This court can only guess as to the medical expert's actual testimony; the transcript reflects the following:

> ALJ: . . . So Dr., let me turn it over to you and let you tell us what the records showed you and then we can address any other questions you might have.
>
> ME: (INAUDIBLE) to note that at (INAUDIBLE) pain in her neck, shoulders and her arms. (INAUDIBLE) of any kind (INAUDIBLE). There are no (INAUDIBLE). (INAUDIBLE). There are no (INAUDIBLE) reports, MRIs (INAUDIBLE). My opinion is that she does not (INAUDIBLE). (INAUDIBLE) six out of eight (INAUDIBLE). (INAUDIBLE) medications. And that's all I have.
>
> ALJ: All right. If they were to send [Plaintiff] for additional testing would it be beneficial in the sense of x-rays or orthopedic examination or no?
>
> ME: I don't know.
>
> ALJ: Okay.
>
> ME: I'm sure it would be particularly in the lumbar area (INAUDIBLE) problems there (INAUDIBLE) quite a bit of evidence of (INAUDIBLE) in the neck but (INAUDIBLE) neck and shoulders (INAUDIBLE) is going to be found in her lumbar spine but yet (INAUDIBLE).

6

ALJ: Mr. Jones,[3] do you have any question for the doctor at this point?

ATT: I don't have any questions. I didn't hear part of what he said.

ALJ: All right.

ATT: He said something about the sitting and standing but I didn't hear his answer to that.

ALJ: All right. And let me just repeat this doctor and if I misstate it let me know. I show that you said that standing and walking could be done for two of the eight hours, sitting for six of the eight hours.

ME: (INAUDIBLE). At least two.

ALJ: Okay. Sitting, excuse me, standing and walking a total of two hours. Sitting could be done for a total of six hours.

ME: Yes.

ALJ: Okay.

ATT: Okay.

* * *

[Tr. 25 - 26].

It is apparent that the court has no way to determine from this record whether, as Plaintiff claims, Dr. Dixon testified that Plaintiff's function was seriously compromised and that a less than two pound lifting restriction was necessitated. Neither is the absence of a reviewable record salvaged, as the Commissioner claims, by the ALJ's rejection of what she believed was Dr. Dixon's lifting limitation – less than ten pounds rather than less than two

---

[3]The ALJ is referencing Gary Jones, Plaintiff's counsel.

pounds – on the basis that the post-hearing lumbar spine x-rays were essentially normal. Even accepting the ALJ's version of Dr. Dixon's testimony to be correct [Tr. 15], it is quite possible that Dr. Dixon imposed a restrictive lifting limit not because of Plaintiff's claimed lower back problems but because of her continuing neck and shoulder symptoms despite a successful cervical fusion.

An ALJ is required to evaluate the opinions of any medical expert she calls in accordance with applicable Social Security regulations. *See* 20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii). Thus, the ALJ was required to weigh the various, conflicting medical opinions of record. *Id.* at 404.1527(d) and 416.927(d). Here, the ALJ implicitly determined to give no weight to Dr. Dixon's lifting restriction opinion – whether it was less than two or less than ten pounds – and, perhaps, to his opinion that Plaintiff had seriously compromised function. It is impossible to determine from the record on judicial review if the ALJ's determination is properly supported because the record of Dr. Dixon's opinions and his rationale in support of those opinions is inaudible. Consequently, remand is required.

With respect to Plaintiff's ability to stand, walk, and sit, Dr. Saidi – to whom the ALJ referred Plaintiff for a post-hearing consultative examination [Tr. 148 - 150] – completed a Medical-Source Statement of Ability to Do Work-Related Activities (Physical) in conjunction with his examination of Plaintiff [Tr. 257 - 262]. He determined, in part, that Plaintiff could sit for twenty minutes at one time without interruption, stand for fifteen minutes, and walk for fifteen minutes [Tr. 258]. He further determined that Plaintiff had the ability, in an eight hour workday, to stand for a total of one hour, to walk for a total of one

hour, and to sit for a total of two hours. *Id.* In response to the form's question of what the individual does for the rest of an eight hour period if the total time for sitting, standing, and walking does not equal or exceed eight hours, Dr. Saidi stated that she would "[l]ay down the rest of the time." *Id.*

The ALJ addressed these findings in the following manner:

> The Administrative Law Judge has also considered the opinion of the post-hearing consultative examiner who checked off items in a form, after physically examining the claimant. (Exhibit 9F).[4] He stated the claimant could lift/carry up to 10 pounds frequently and 20 pounds occasionally. He went on to state the claimant could not sit/stand/walk for more than 4 hours total in an 8 hour work day and she lies down the rest of the time. However, he notes that there are no significant findings at his time. It appears the doctor may have simply reiterated what the claimant reported she did the rest of the day. The Administrative Law Judge does not find support in the objective medical findings for the opinion that the claimant needs to recline 4 of 8 hours per workday and the Administrative Law Judge gives that portion of the opinion little weight. Although Dr. Kelly occasionally advised bed rest, there

---

[4]Dr. Saidi's report of the examination – which took place on the same day as the post-hearing lumbar x-rays were taken [Tr. 263] – stated in part that:

> The patient is able to walk without an artificial device. The patient's gait is normal, safe and stable. The patient can do toe and heel walking, but this is weak. Straight-leg raise test is positive on both sides. Motor strength is 3/5 in the biceps and triceps area. Handgrip strength is normal on both sides. Motor strength is 3/5 in the quadriceps and hamstrings. Dorsiflexion and plantar flexion of the feet are in the normal range. Cervical spine with flexion, extension, lateral flexion and rotation is decreased associated with pain and stiffness. Dorsolumbar flexion, extension and lateral flexion is decreased associated with pain and stiffness. Hip joints with internal rotation, external rotation, abduction, adduction, forward flexion and backward flexion are decreased associated with pain and stiffness.

[Tr. 251].

is no recommendation of permanent bed rest.

[Tr. 16 - 17].

Plaintiff maintains – correctly – that the ALJ ignored Dr. Saidi's opinions with regard to Plaintiff's ability to sit, walk, and stand [Tr. 13, pp. 12 - 13]. While the ALJ found no record support for Plaintiff's need for bed rest and deduced that Dr. Saidi "simply reiterated what the claimant reported she did the rest of the day[,]" [Tr. 16 - 17], she did not explain her determination to give no weight to Dr. Saidi's time limitations on sitting, standing, and walking. Remand is required for consideration of this medical source opinion.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by July 11, 2011, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 20th day of June, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE